IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| PIONEER CORPORATION, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 2:06-CV-384 (DF) |
| | § | |
| SAMSUNG SDI CO., LTD., SAMSUNG | § | |
| ELECTRONICS CO., LTD., SAMSUNG | § | |
| SDI AMERICA, INC. and SAMSUNG | § | |
| ELECTRONICS AMERICA, INC., | § | |
| | § | |
| Defendants. | § | |

## O R D E R

Before the Court is Pioneer's Motion Pursuant to Daubert and Federal Rules of Evidence 702, 703, 402, 403, and 408 to Preclude Brian W. Napper from Relying on, or Otherwise Referring to, Certain Settlement Negotiations, Offers and Agreements at Trial. Dkt. No. 287. Samsung has responded to this motion, Pioneer has replied, and Samsung has sur-replied. Dkt. Nos. 289, 296, & 305. Also before the Court is Pioneer's Motion in Limine to Preclude Samsung and Its Expert Witnesses from Mentioning, Referring to, or Attempting to Introduce Evidence Concerning Settlement Negotiations, Offers and Agreements, to which Samsung has responded. Dkt. No. 322 & 345.

The Court held a hearing on this and other matters on September 22, 2008. Dkt. No. 351. Having considered the arguments of counsel, all relevant papers and pleadings, the Court finds that Pioneer's Motions (Dkt. Nos. 287 & 322) should be **GRANTED IN PART** as to the admissibility of negotiations, offers, and agreements entered into under the "threat of litigation," and these

motions should be otherwise **DENIED IN PART**.

## I. BACKGROUND

Pioneer brings this patent infringement action against Samsung for the alleged infringement of United States Patent Nos. 5,182,489 ("the '489 Patent") and 5,640,068 ("the '068 Patent"). Dkt. No. 1.  Samsung counterclaims alleging that Pioneer infringes U.S. Patent Nos 6,256,001 ("the '001 Patent"), 6,650,051 ("the '051 Patent"), 7,106,280 ("the '280 Patent") and Patent No. 7,015,648 ("the '648 Patent").  Dkt. No. 72.

Pioneer now seeks to exclude or strike certain testimony of Samsung's damages expert, Brian W. Napper.  Dkt. Nos. 287 & 322.  Pioneer objects to Mr. Napper's reliance on information from six sets of settlement negotiations in his May 21, 2008 Report and June 9, 2008 Rebuttal Report. *See* Dkt. No. 287 at 4-6; Ex. 1 & 2.[1]  Specifically, Pioneer challenges Mr. Napper's reliance on negotiations and agreements between (1) Pioneer and Samsung SDI, (2) Pioneer and LG Electronics, (3) Samsung and Matsushita Electronics Co., (4) Samsung and Fujitsu Limited, (5) Pioneer and Positive Technologies, and (6) Samsung and Positive Technologies.  *Id.*; *see also* Dkt. No. 322 at 2-5.  Pioneer contends that the settlement information upon which Mr. Napper relies (a) is not relevant to the determination of a reasonable royalty and (b) is inadmissable under Rule 408 and not the type of information that can be reasonably relied upon by experts under Rules 702 and 703.  *Id.* at 6.

---

[1] Mr. Napper's reports consider numerous settlement offers and agreements, some made by Pioneer and others by Samsung.  The Pioneer negotiations include: (1) negotiations with Samsung SDI, (2) negotiations with LGE, (3) a settlement offer and a cross-license agreement with MEI, (4) a cross-license agreement with Fujitsu, (5) a cross-license agreement with Hitachi, and (6) a settlement agreement with Positive Technologies.  The Samsung negotiations include: (1) negotiations with Pioneer, (2) a settlement offer and cross-license agreement with Fujitsu, (3) negotiations and a cross-license agreement with MEI, and (4) negotiations with Positive Technologies.  Dkt. No. 287, Ex. 1 & 2.

## II.  LEGAL PRINCIPLES

Federal Rule of Evidence ("Rule") 702 requires that any expert be qualified to testify by "knowledge, skill, experience, training, or education."  Fed. R. Evid. 702.  Specifically, Rule 702 states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise, if
>
> (1) the testimony is based upon sufficient facts or data,
>
> (2) the testimony is the product of reliable principles and methods, and
>
> (3) the witness has applied the principles and methods reliably to the facts of the case.

Any such testimony must "assist the trier of fact to understand the evidence or to determine a fact in issue."  *Id.*   When faced with a proffer of expert testimony, it is the trial judge's responsibility to determine, at the outset, whether the expert is proposing to testify to expert knowledge and whether such testimony will assist the trier of fact to understand or determine a fact in issue.  *Id.*; *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592 (1993).  In this regard, the trial judge acts as a gatekeeper by requiring a valid connection to the pertinent inquiry and assessing "whether the testimony has a reliable basis in the knowledge and experience of [the relevant] discipline."  *Daubert*, 509 U.S. at 592; *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 149 (1999).

To constitute expert knowledge that will "assist the trier of fact," the proposed testimony must be both relevant and reliable.  *E.I. duPont de Nemours & Co., Inc. v. Robinson*, 923 S.W.2d

549, 556 (Tex. 1996).  The trial judge's role is to make the initial determination of whether an expert's opinion is relevant and whether the methods and research upon which it is based are reliable.  *Id.* at 558.  Relevant testimony is that which is "sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute."  *Id.* at 556 (quotation omitted).

### III.  THE PARTIES' POSITIONS

At the outset, Pioneer argues that, to the extent Mr. Napper relies on settlement negotiations conducted under the threat of litigation, his expert testimony is neither reliable or relevant.  Dkt. No. 287 at 7 (citing *Rude v. Westcott*, 130 U.S. 152, 164 (1889); *Deere & Co. v. Int'l Harvester Co.*, 710 F.2d 1551, 1556-58 (Fed. Cir. 1983)).  The reliability and relevancy of such settlements is questionable because they arguably take into account the "significant costs and risks associated with litigating patent infringement through judgment and appeal."  *Id.* at 8 (citing *Hanson v. Alpine Valley Ski Area, Inc.*, 718 F.2d 1075, 1078-79 (Fed. Cir. 1983); *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152, 1164 n. 11 (6th Cir. 1978) (license fees "negotiated in the face of a threat of high litigation costs 'may be strongly influenced by a desire to avoid full litigation.'").  As such, Mr. Napper "should be precluded from relying on or testifying at trial" about any such settlement negotiations.  *Id.*

Pioneer further argues that such settlement negotiations are also inadmissible under Rule 408. *Id.* at 9.  Pioneer contends that Rule 408 applies to settlement offers and agreements made in the context of a dispute between parties regardless of whether a formal complaint has been filed and litigation commenced.  *Id.* (citing *Affiliated Mfrs., Inc. v. Aluminum Co. of Am.*, 56 F.3d 521, 527 (3d Cir. 1995)).  Pioneer argues that "there can be no doubt that Pioneer and Samsung (and LGE) disputed the validity and amount of Pioneer's infringement claims when Pioneer made its settlement

offers." *Id.*

Lastly, Pioneer argues that even if such settlement information was somehow relevant to the calculation of a reasonable royalty, its probative value is minimal. Dkt. No. 322 at 9-10. In support of this contention, Pioneer points to Samsung's admissions that Mr. Napper could have reached his same conclusions without such information. *Id.* at 10. Give this minimal probative value, Pioneer contends that the danger of unfair prejudice and juror confusion should preclude Mr. Napper from testifying about such settlement information at trial. *Id.*

Samsung responds that under the Federal Rules, Mr. Napper may consider all pertinent evidence in forming his opinion, regardless of its admissibility. Dkt. No. 289 at 4 (citing Fed. R. Evid. 703). Samsung contends that numerous courts, including this Court, have "repeatedly held that experts may properly rely on license agreements and settlement negotiations in evaluating reasonable royalty rates." *Id.* at 4-6 (citing *Spreadsheet Automation Corp. v. Microsoft Corp.*, 2007 WL 4386258 (E.D. Tex. Feb. 23, 2007); *Acco Brands, Inc. v. ABA Locks Mfr. Ltd.*, Civil Action No. 2:02-CV-112, Dkt. No. 196 (E.D. Tex. May 17, 2004); *Putnam v. Henkel Consumer Adhesives, Inc.*, 2007 WL 4794115 (N.D. Ga. Oct. 29, 2007)). Accordingly, Samsung argues that Mr. Napper can, at the very least, "consider" such settlement information in the formation of his opinion. *Id.* at 4.

In the alternative, Samsung argues that such settlement information is not necessarily inadmissible. Dkt. No. 289 at 6-7; Dkt. No. 345 at 4-8. Specifically, Samsung argues that "evidence concerning the pre-suit negotiations between Pioneer and Samsung negates the essential element of Pioneer's willfulness claim that Samsung knew or should have know of an objectively-high risk that its actions infringed a valid Pioneer patent." Dkt. No. 345 at 4-5 (citing *In re Seagate Tech., LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007). Samsung contends that the parties' pre-suit negotiations show

"that Samsung reasonably believed Pioneer's patents were invalid and not infringed, engaged in detailed technical analyses to communicate that belief to Pioneer, and made good-faith attempts to resolve Pioneer's complaints without resort to litigation, all of which bear on [a] willfulness inquiry." *Id.* (citing *Seagate*; *ResQnet.com, Inc. v. Lansa, Inc.*, 533 F. Supp. 2d 397, 420 (S.D.N.Y. 2008)).

Lastly, Samsung argues that many of the agreements considered by Mr. Napper are not subject to Rule 408. Dkt. No. 289 at 8; Dkt. No. 345 at 5-6. Samsung contends that many of the negotiations referenced by Mr. Napper were "part of the normal course of business dealings in the plasma display industry" and were thus arms-length transactions not under the threat of litigation. *Id.* Accordingly, Samsung argues that the individual admissibility of each negotiation referenced by Mr. Napper is a "fact-intensive" inquiry that should be decided in light of a fully-developed record rather than the parties' current briefing. Dkt. No. 305 at 4-5.

## IV.  DISCUSSION

The present motions present two related but distinct issues: (1) whether patent damage experts should be permitted to testify at trial as to settlement negotiations, offers, and agreements; and (2) whether patent damage experts should be permitted to consider such information in the formulation of their opinions.

## A. Admissibility of Settlement Negotiations, Offers, and Agreements

### 1. Rule 408

Rule 408 limits the general admissibility of compromises and offers to compromise made in relation to disputed claims. Fed. R. Evid. 408. Specifically, Rule 408 provides in pertinent part:

(a) Evidence of the following is not admissible *on behalf of any party*, when offered

to prove liability for, invalidity of, *or amount* of a claim that was disputed as to validity or amount . . . :

(1) furnishing or offering or promising to furnish—or accepting or offering or promising to accept—a valuable consideration in compromising or attempting to compromise the claim; and

(2) conduct or statements made in compromise negotiations regarding the claim . . . .

(b) This rule does not require exclusion if the evidence is offered for purposes not prohibited by subdivision (a).

Fed. R. Evid. 408 (emphasis added).

Rule 408 is thus "designed to encourage settlements by fostering free and full discussion of the issues." *Ramada Dev. Co. v. Rauch*, 644 F.2d 1097, 1106 (5th Cir. 1981). "The present rule fosters free discussion in connection with such negotiations and eliminates the need to determine whether the statement . . . falls within or without the protected area of compromise; the question under the rule is whether the statements or conduct were intended to be part of the negotiations toward compromise." *Id.* at 1106-07 (citations omitted). The Rule, however, "by its terms does not operate to exclude evidence unless it is offered to prove liability for or invalidity of the claim or its amount." *Belton v. Fibreboard Corp.*, 724 F.2d 500, 505 (5th Cir. 1984). "Whether to admit evidence for another purpose is within the discretion of the trial court . . . ." *Id.*

In the context of patent disputes, the Supreme Court, over one-hundred years ago, cautioned against considering license fees negotiated under the threat of litigation. *Rude v. Westcott*, 130 U.S. 152, 164 (1888) ("The avoidance of the risk and expense of litigation will always be a potential motive for a settlement."). Due to their inherent unreliability, the Court determined that such negotiations "cannot be taken as a standard to measure the value of the improvements patented, in determining the damages sustained by the owners of the patent in other cases of infringement." *Id.*

Numerous Courts have relied on the Supreme Court's reasoning in *Rude v. Westcott* and likewise found that license fees negotiated under the threat of litigation are inherently unreliable and properly excludable under Rule 408. *See Cornell Univ. v. Hewlett-Packard Co.*, No. 01-CV-1974, Dkt. No. 996 at 4-6 (N.D.N.Y. May 8, 2008) (Rader, J.) (such negotiations "show few signs of an arms-length transaction between willing bargainers, but instead show an effort to avoid the expense and adverse publicity of litigation"); *PharmaStem Therapeutics, Inc. v. Viacell Inc.*, No. C.A. 02-148, 2003 WL 22387038, at *2-4 (D.Del. Oct. 7, 2003) ("a license agreement may be excluded from evidence under Rule 408 where it (1) was reached under a threat of litigation, (2) arose in a situation where litigation was threatened or probable, or (3) was negotiated against a backdrop of continuing [infringement litigation]"). Indeed, this Court has held under similar circumstances that "consent decrees, settlements, and licenses made under the threat of litigation would not be proper evidence of . . . damages to present to the jury." *Spreadsheet Automation Corp.*, 2007 WL 4386258 at *5.

Thus, negotiations, offers, and agreements reached under the threat of litigation are properly excludable under Rule 408 unless offered for some other non-prohibited purpose. *See* Fed. R. Evid. 408(b). Samsung attempts such an "end run" around Rule 408 by contending that such evidence is admissible to disprove allegations of willful infringement under the objective recklessness standard recently enunciated in *In re Seagate*. Circuit Judge Rader, sitting by designation in the Northern District of New York, however, found such an argument unpersuasive under similar circumstances. *Cornell*, Dkt. No. 996 at 6. This Court finds Samsung's argument similarly unpersuasive; the parties' negotiations are not in anyway probative of Samsung's objective recklessness with regard to Pioneer's patents.

-8-

Accordingly, this Court finds that testimony relating to negotiations, offers, and agreement reached under the threat of litigation are properly excludable under Rule 408.

This Court, however, finds that negotiations, offers, and agreements *not* entered into under the threat of litigation are thus not "disputed" as required by Rule 408 and are admissible.

### 2. Rule 402

This Court also examines the admissibility of settlements and offers reached under the threat litigation under Rules 402 and 403. Rule 402 provides that "[e]vidence which is not relevant is not admissible." Fed. R. Evid. 402. Rule 403 provides that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice [or] confusion . . . ." Fed. R. Evid. 403. The determination of admissibility under both Rules is committed to the discretion of the trial court. *See Wright v. Hartford Acc. & Indem. Co.*, 580 F.2d 809, 810 (5th Cir. 1978) ("This is a question of legal relevance, a matter on which the trial judge has wide discretion, and which the appellate court will not reverse unless the trial judge has clearly abused his discretion.").

Under the well established *Georgia Pacific* factor test for determining reasonable royalty rates in patent cases, the hypothetical negotiation assumes a willing licensee, willing licensor arrangement. *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970). Thus, the Federal Circuit "has established a body of case law excluding license agreements 'eroded by litigation' as irrelevant to the *Georgia-Pacific* reasonable royalty analysis." *Cornell*, Dkt. 996 at 7 (citing *Deere & Co.*, 710 F.2d at 1557-58; *Studiengesellschaft Kohle, m.b.H. v. Dart Indus., Inc.*, 862 F.2d 1564, 1571-72 (Fed. Cir. 1988)). Where a license agreement thus "arises under the threat of litigation, it has *little relevance* to the hypothetical reasonable royalty situation." *Id.*

(emphasis added).

Accordingly, this Court finds that even if negotiations, offers, and agreements reached under the threat of litigation had some probative value, such value would be too slight and clearly outweighed by the danger of unfair prejudice and confusion.  Such evidence is thus excluded under Rule 403.

This Court, however, finds that negotiations, offers, and agreements *not* entered into under the threat of litigation may be probative of a reasonable royalty.  *See Spreadsheet Automation Corp.*, 2007 WL 4386258 at *4 (citing *Studiengesellschaft Kohle*, 862 F.2d at 1572 (Fed. Cir. 1988)).  Such arms-length transactions are presumably between willing licensors and willing licensees and are thus entirely probative of the *Georgia-Pacific* hypothetical negotiation.[2]

In sum, this Court finds that evidence of negotiations, offers, and agreements reached under the threat of litigation is inadmissible under Rules 403 and 408.  Conversely, evidence of negotiations, offers, and agreements *not* entered into under the threat of litigation is admissible.  The determination of whether such evidence was or was not under the threat of litigation is, as Samsung suggests, a fact-intensive inquiry.  As such, the Court orders the parties to file supplemental briefing (1) identifying each negotiation in Mr. Napper's report that is challenged and (2) providing facts demonstrating a threat of litigation.

## B.  Reliance on Settlement Negotiations in the Formation of an Expert Opinion

Rule 703 explicitly provides that the facts and data upon which an expert relies "need not be admissible in evidence in order for the opinion or inference to be admitted." Fed. R. Evid. 703.  This

---

[2] Likewise, evidence of damages (including royalties) established by judgment of a Court are properly admissible under Rule 402 and are not excludable under Rule 408.  *Id.* at *5.

Court has held in the past that an expert's report need not be entirely excluded if the expert considered royalty rates and agreements that arose out of litigation, as long as the report does not *exclusively* rely on such evidence.   *Spreadsheet Automation Corp*, 2007 WL 4386258 at *5. Likewise, other Courts have held that experts may partly consider such information as "data points" within their damages analysis when the analysis does not exclusively rely on such evidence.  *See* Putnam, 2007 WL 4794115 at *5 (Because the settlement rate "amounts to a *single* data point among many, the court does not believe that [the expert's] entire analysis . . . should be excluded."); *Acco Brands*, Dkt. No. 196 (An expert can "consider such royalty rates and the underlying agreements in the formation of an opinion . . . *particularly when the expert arrives at the same figure without considering the excluded agreements*." (emphasis added)).

Although this Court finds that negotiations, offers, and agreements reached under the threat of litigation should not be admitted under either Rules 403 or 408, such evidence may still be of *some* relevance to a damages expert when considered as one factor among many.  Conversely, experts may not exclusively rely on such negotiations, offers, and agreements.  Such, however, is not the case here.  Although Mr. Napper has arguably considered negotiations, offers, and agreements reached under the threat of litigation, he has also considered offers and agreements that arguably occurred between willing licensors and licensees, as well as numerous other factors.  Thus, this Court finds that Mr. Napper's report does not exclusively rely on negotiations, offers, and agreements reached under the threat of litigation.

Accordingly, Pioneer's Motion to Preclude Mr. Napper from relying on negotiations, offers, and agreements reached under the threat of litigation is denied.

-11-

## V.  CONCLUSION

Pioneer's Motion Pursuant to Daubert and Federal Rules of Evidence 702, 703, 402, 403, and 408 to Preclude Brian W. Napper from Relying on, or Otherwise Referring to, Certain Settlement Negotiations, Offers and Agreements at Trial (Dkt. No. 287) and Pioneer's Motion in Limine to Preclude Samsung and Its Expert Witnesses from Mentioning, Referring to, or Attempting to Introduce Evidence Concerning Settlement Negotiations, Offers and Agreements (Dkt. No. 322), are hereby **GRANTED IN PART** as to the admissibility of negotiations, offers, and agreements entered into under the "threat of litigation."  These motions should be otherwise **DENIED IN PART**.

In accordance with this order, statements regarding negotiations, offers, and agreements entered into under the threat of litigation are inadmissible.  Conversely, statements regarding negotiations, offers, and agreements not entered into under the threat of litigation are admissible. In forming his opinion, however, Mr. Napper may consider such negotiations, offers, and agreements regardless of their admissibility.

Furthermore, the parties are hereby **ORDERED** to supply supplemental briefing to this Court (1) identifying each challenged negotiation in Mr. Napper's report, and (2) providing facts. which demonstrate a threat of litigation.  As movant, Pioneer bears the burden of establishing which negotiations, offers, and agreements were entered into under a threat of litigation.[3]

**IT IS SO ORDERED.**
**SIGNED this 2nd day of October, 2008.**

DAVID FOLSOM
UNITED STATES DISTRICT JUDGE

[3]  A briefing schedule regarding this matter will be discussed during the October 3, 2008 Claim Construction Hearing in Pioneer II.

-12-